UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KIRKPATRICK B. DUNBAR,

          Plaintiff,

v.

EMPIRE SZECHUAN NOODLE HOUSE
INC and NEW GOLD EQUITIES CORP.,

          Defendants.

Civil Action No.:
18-cv-9625



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/5/20

## MEMORANDUM DECISION DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1)

McMahon, CJ:

Plaintiff Kirkpatrick B. Dunbar ("Plaintiff") brings this action against Defendants,

Empire Szechuan Noodle House Inc. and New Gold Equities Corp. ("Defendants"), for

injunctive relief pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 ("ADA"),

the New York City Human Rights Law ("NYCHRL"), and the New York State Human Rights

Law ("NYSHRL") based upon Defendants' alleged failure to remove physical barriers to access

in violation of Title III of the ADA.

Plaintiff, disabled as defined by the ADA, alleges that the public place of accommodation

at 4041 Broadway, owned by New Gold Equities, and previously operated as a restaurant by

Empire Szechuan, is inaccessible to him, in violation of the ADA, NYCHRL, and NYSHRL.

Having evicted Empire Szechuan from the property for failure to pay rent, Defendant

New Gold now moves to dismiss the Complaint as moot pursuant to Rule 12(b)(1) of the Federal

Rules of Civil Procedure. Defendant Empire Szechuan joins that motion.

As to Defendant Empire Szechuan, Defendants' motion is GRANTED.

As to Defendant New Gold, Defendants' motion is DENIED.

## FACTUAL BACKGROUND

### I.     The Parties

Plaintiff Kirkpatrick Dunbar is a resident of the State of New York, County of Bronx, and

is disabled as defined by the ADA. Plaintiff uses a wheelchair for mobility and is substantially

limited in performing activities including but not limited to walking, standing, grabbing,

grasping, and/or pinching. (Dkt. No. 48, Second Amended Complaint ¶ 3.)

On April 26, 2018, Plaintiff visited 4041 Broadway, New York, NY 10032 (the

"Property") with the intention of being a customer at the restaurant Empire Szechuan. Plaintiff

was unable to enter the restaurant due to the barriers to access present at the entrance and within

the Property. (*Id.* ¶ 4.)

Defendant Empire Szechuan, a New York business corporation that transacted business

in the State of New York and within this judicial district, previously operated the restaurant at

4041 Broadway. (*Id.* ¶ 7.)

Defendant New Gold, a foreign limited liability company that transacts business in the

State of New York and within this judicial district, owns and manages the Property.[1] (*Id.* ¶ 8.)

### II.    The Eviction

On October 18, 2018, after a failure to pay rent, Empire entered into a stipulation with

Defendant New Gold to pay rental arrears. (Dkt. No. 48, Exhibit P.)

On August 1, 2019, Defendant New Gold enforced the stipulation. (*Id.*)

---

[1] On November 30, 2015, the lease was assigned by Empire Szechuan to AFC Restaurant, Inc, a
domestic corporation. (Dkt. No. 48, Exhibit N.) The restaurant continued to be operated under
the name Empire.

On August 22, 2019, Defendant Empire was evicted from the subject premises under color of the tenant's default under the terms of the stipulation. (Dkt. No. 48, Declaration of David Olenick, ¶ 9.)

## III.   Subsequent Construction and New Tenant

On or about October 11, 2019, New Gold Equities Corp., entered into a lease with Café Prime & Buffet Inc … to operate a buffet type delicatessen." (*Id.* ¶ 5.)

Indeed, Defendant New Gold admits that it "never had any intentional [sic] of keeping the subject site vacant. After the eviction of [Empire Szechuan], the owner sought a new tenant for the subject site." (Dkt. No. 52, Olenick Declaration ¶ 4.)

Plaintiff's inspection of the Property on January 3, 2020, months after Empire Szechuan was evicted and over a year after Plaintiff brought this action, revealed that Defendant New Gold had begun construction on renovations of the Property for the deli. (Dkt. No. 50, Exhibits 2-7.)

Defendants have indicated that New Gold has sent the construction plans "for review to an outside expert on ADA compliance." (*Id.* ¶ 8.)

Defendant New Gold did not produce to Plaintiff its ADA remediation plan for the new construction. (Dkt. No. 50.)

## IV.   Procedural Background

On October 23, 2018, Plaintiff filed the Complaint against Empire Szechuan Noodle House, Inc. seeking injunctive relief pursuant to the ADA. (Dkt. No. 4.) The Complaint identified IG Greenpoint Corp., an "inactive New York limited liability company" Plaintiff alleged was "the owner and/or operator of the real property and improvements" at issue. (Compl. ¶ 8.) The case was assigned to my recently-deceased colleague, The Hon. Deborah A. Batts.

On October 29, 2018, Plaintiff filed an Amended Complaint. (Dkt. No. 7.)

On November 26, 2018, Defendant Empire Szechuan filed an answer to the Amended Complaint. (Dkt. No. 11.)

On February 14, 2019, the Parties held an initial conference. (Dkt. No. 14.) At that initial conference, Judge Batts advised Plaintiff to bring the landlord of the Property in as a defendant unless a settlement was reached before the Parties' May 16, 2019 status conference. Judge Batts ordered Defendant Empire Szechuan to provide Plaintiff with information about the Landlord by 2/19/2019. (*Id.*)

On March 8, 2019, the Parties stipulated and agreed that the caption and the Complaint in the action be amended to add New Gold Equities Corp., the landlord, to this action. (Dkt. No 18.)

On March 11, 2019, Plaintiff filed a Second Amended Complaint adding New Gold Equities Corp as a Defendant in this action. (Dkt. No. 19.)

On April 8, 2019, Defendant Empire Szechuan filed an answer to the Second Amended Complaint. (Dkt. No. 22.)

On April 30, 2019, a Clerk's Certificate of Default was issued as to Defendant New Gold Equities Corp. noting that Defendant failed to answer or otherwise move with respect to the Second Amended Complaint and that a copy of the summons and Complaint was served on Defendant New Gold with proof of service filed on 4/8/2019. (Dkt. No. 26.)

On May 9, 2019, the Parties entered into a stipulation and agreement extending the time in which defendant New Gold Equities could appear and interpose an answer to the Second Amended Complaint to May 31, 2019. (Dkt. No. 30.)

On May 31, 2019, Defendant New Gold Equities filed an answer to the Second Amended Complaint. (Dkt. No. 33.)

On September 9, 2019, Defendant New Gold wrote a letter to the Court seeking leave to move to dismiss the action as moot. The letter indicated that Defendant New Gold had commenced a summary proceeding for non-payment of rent against Defendant Empire Szechuan, and that Empire Szechuan had been evicted from the Property on August 21, 2019. The letter further expressed the view that the case should be dismissed as moot "since the restaurant is closed, there is no place of public accommodation in violation of the statute; and remediation … is academic." (Dkt. No. 42.)

On September 13, 2019, Defendant Empire Szechuan wrote a letter to the Court confirming that it had been evicted from the Property and seeking to dismiss the action as against it as moot. (Dkt. No. 46.)

On November 19, 2019, Judge Batts granted Defendants leave to file motions to dismiss. (Dkt. No. 47.)

On December 9, 2019, Defendant New Gold Equities filed its motion to dismiss the Second Amended Complaint as moot pursuant to Federal Rule of Civil Procedure 12(b)(1). (Dkt. No. 48.)

On December 11, 2019, Defendant Empire Szechuan filed a letter to "adopt and join" Defendant New Gold's motion to dismiss. (Dkt. No. 49.)

On February 20, 2020, this case was reassigned to me.

## DISCUSSION

### I.  Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a motion to

dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). A district court may consider evidence outside the pleadings when resolving a motion to dismiss for lack of subject matter jurisdiction. *Id.*

Though the Court has original jurisdiction over the action pursuant to 28 U.S.C §§ 1331 and 1343 for Plaintiff's claims arising under 42 U.S.C. §12181, under Article III of the Constitution, "When a case becomes moot, the federal courts lack subject matter jurisdiction over the action." *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013).

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013). (citation omitted). Generally, "the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Id.* at 91 (citation omitted).

## II.    Empire Szechuan's Motion to Dismiss Pursuant to Rule 12(b)(1) is GRANTED.

As Plaintiff concedes, Plaintiff's lone federal claim against Empire Szechuan, brought for injunctive relief under the ADA, became moot when Empire Szechuan vacated the premises. It is well established that a private plaintiff suing under the ADA "may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004); *see also Brief v. Albert Einstein Coll. of Med.*, 423 Fed. Appx. 88, 90 (2d Cir. 2011) (Title III of the ADA "allows only for injunctive relief").

Where, as here, such redress is no longer possible, the ADA claim becomes moot, depriving the court of subject matter jurisdiction, and must be dismissed. *Charnoff v. Baldwin Realty Grp., Inc.,* 8 Misc. 3d 1023(A), WL 1875739, at \*3 (Sup. Ct. N.Y. Co. 2005) (dismissing ADA claim because "The defendant has submitted an affidavit establishing that the [] business is closed and the building is currently vacant").

Because the only federal claim against Empire Szechuan has been rendered moot, this Court declines to exercise supplemental jurisdiction over Plaintiff's pendent state and local law claims. *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988) (noting that the "usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine … will point toward declining to exercise jurisdiction over the remaining state-law claims."); *see also Kolari v. N. Y. Presbyterian Hosp.,* 455 F.3d 118, 123 (2d Cir. 2006) (reversing district court decision to retain supplemental jurisdiction over state law claims after dismissing federal claim, citing "the absence of a clearly articulated federal interest"); *Marcus v. AT&T Corp.,* 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *Thomas v. Grunberg 77 LLC,* No. 15 cv 1925, 2017 WL 3225989, at \*2 (S.D.N.Y. July 5, 2017), *report and recommendation adopted,* No. 15 cv 1925, 2017 WL 3263141 (S.D.N.Y. July 28, 2017) (dismissing without prejudice claims brought under state and local law after dismissing ADA claims as moot).

## III.  New Gold's Motion to Dismiss Pursuant to Rule 12(b)(1) is DENIED.

Defendant New Gold argues that all ADA claims, as stated in the Second Amended Complaint, are moot because Empire Szechuan no longer occupies 4041 Broadway, and the new tenant is contractually bound to "comply with all laws, which includes the requirements of the

7

Americans with Disabilities Act and the State and City laws and regulations related to accessibility." (Dkt. No. 52, Olenick Decl. ¶ 7.)  Defendants therefore conclude that, under Rule 12(b)(1), this Court lacks subject-matter jurisdiction over the ADA claims.

Though New Gold points to *Thomas v. Grunberg 77 LLC*, No. 15 cv 1925, 2017 WL 3225989, as a case "identical to the facts of the case at bar," (Dkt. No. 48, Def. Mem. of Law at 8), *Thomas* is instantly distinguishable. In *Thomas*, the facilities at issue were *permanently* closed. *Thomas*, 2017 WL 3225989 *2. The Property here, by contrast, though under construction, will reopen. New Gold has secured a tenant and begun construction to operate a buffet and delicatessen, undoubtedly a place of public accommodation under the ADA. *See* 42 U.S.C.A. § 12181 (7)(B) (defining a place of public accommodation as "a restaurant, bar, or other establishment serving food or drink"). It is possible that the conditions that caused Plaintiff to commence this lawsuit will be remedied by the new tenant, but it is possible that they will not be. The landlord is always liable for ADA compliance. *See Botosan v. Paul McNally Realty*, 216 F.3d 827, 832–833 (9th Cir. 2000) (holding that "The express terms of the ADA hold a landlord liable for noncompliance" and that "a landlord has an independent obligation to comply with the ADA that may not be eliminated by contract"). Indeed, the ADA imposes the obligation to comply with the accommodation provisions on "any person who *owns*, leases (*or leases to*), or operates a place of public accommodation." 42 U.S.C. § 12182(a) (emphasis added).

What's more, in *Thomas*, plaintiff conceded that all federal claims were moot and the only question before the magistrate judge was whether to retain supplemental jurisdiction over state and local law claims.  The Court was not, as Defendant would have us believe, adjudicating whether the ADA claims were themselves moot.

To answer that question, the Court must turn elsewhere.

Defendants have offered little aid in that regard other than noting in reply to Plaintiff's opposition that their lease with the new tenant requires that it "comply with all laws" including the ADA and State and City laws and regulations concerning accessibility and that they have sent the new tenant's alteration plans "for review to an outside expert on ADA compliance." (Dkt. No. 52, Olenick Decl. ¶ 8.)

But New Gold's new tenant, like Empire Szechuan before it, already has an independent obligation to "comply with all laws" including the ADA and State and City laws and regulations concerning accessibility, regardless of the terms of the lease.

The "voluntary cessation" exception to the mootness doctrine recognizes that "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Id.* "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.*; *see also Knox v. SEIU*, 567 U.S. 298, 307 (2012) ("The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed.").

Given this concern, "the standard ... for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, Inc., 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). "The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id.* (citation omitted).

9

New Gold's promise that its tenant will comply with the law, no matter how sincere, is not enough to render the case moot and does not come close to meeting this heavy burden.

This Circuit applies a two-part test to determine when voluntary cessation may render a case moot: "if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 110 (2d Cir. 2010) (citation omitted) (emphasis added).

Defendant relies on its promise of voluntary compliance with the ADA to argue that Plaintiff's federal claims are now moot. While it is true that ADA violations Plaintiff complains of might be addressed in the renovation plans, Defendants have not presented evidence that there is no reasonable expectation that the alleged ADA violations will recur. The renovation that might eventually bring the facility into ADA compliance is incomplete. For that reason, it cannot credibly be contended that New Gold has "completely and irrevocably eradicated the effects" of the alleged ADA violations. The Court simply has no basis to conclude that this case is moot.

However, I will give the parties 60 days to take discovery on the issue of whether the premises as reconstructed for a new tenant are ADA compliant. And I invite New Gold to move for summary judgment if, in the opinion of its ADA compliance expert, they are. I will resolve that issue expeditiously. And should the federal claim be dismissed, the Court will not likely choose to exercise supplemental jurisdiction over the state and local claims against New Gold – which relate to a prior tenancy, and which will be adjudicated against that tenant in the New York State Supreme Court.

## CONCLUSION

For the foregoing reasons, Defendant Empire Szechuan's motion to dismiss the Second Amended Complaint pursuant to Rule 12(b)(1) is GRANTED. Defendant New Gold Equities Corp.'s motion to dismiss the Amended Complaint pursuant to Rule 12(b)(1) is DENIED.

This constitutes the order of the Court. The Clerk of the Court is directed to remove the motion at Dkt. Nos. 48 and 49 from the Court's list of pending motions.

Dated: May 5,  2020

Chief Judge

BY ECF TO ALL COUNSEL